**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DANIEL W. BURRITT,**

                                    **Plaintiff,**


        **-against-**                                                **08-CV-605**

**NEW YORK STATE DEPARTMENT OF**
**TRANSPORTATION; ROBIN DISBRO, in**
**her official capacity as Real Estate Specialist**
**for the New York State Department of**
**Transportation, Region Seven, Watertown,**
**New York,**

                                    **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**



**DECISION & ORDER**

**I.  INTRODUCTION**

        Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 seeking injunctive

and declaratory relief.  He contends that New York State Highway Law Sections 86 and

88, and their enforcement regulations, 17 NYCRR Part 150 (collectively "Sign Laws"),

violate his right to freedom of speech as guaranteed by the First Amendment to the United

States Constitution.  He moves for a preliminary injunction preventing the State of New

York from enforcing the Sign Laws relative to a sign on his property until the Court

1

resolves his application for a permanent injunction.[1]   Defendants have cross-moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6).  See Def. Mot. Dismiss [dkt. 9].

## II.    STANDARDS OF REVIEW

### a.    12(b)(6)

A motion brought under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims pleaded in a case.  On a motion to dismiss, all factual allegations in the complaint are accepted as true, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed.2d 517 (1993), and the Court must determine whether Plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969, 167 L. Ed.2d 929 (2007).  As such, the Court must determine whether the "[f]actual allegations . . . raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id., at 1965; see Barkley v. Olympia Mortgage Co., 2007 WL 2437810, at * 9 (E.D.N.Y. Aug. 22, 2007).  An action that could not survive a Fed. R. Civ. P. 12(b)(6) motion could not, a fortiori, satisfy the preliminary injunction standard (discussed infra).  Conversely, an action in which it is determined that the plaintiff is entitled to a preliminary injunction could not be dismissed en toto pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1]After commencement of the action, the parties entered a stipulation staying state enforcement proceedings until after the Court issues a decision on Plaintiff's application for a preliminary injunction thereby obviating the need for the previously-sought Temporary Restraining Order and adjourning the preliminary injunctions motion.  See 6/11/08 Stipulation [dkt. # 5]; 6/12/08 Stipulation and Order [dkt. # 7]; 8/5/08 Oral Order.

**b.**    **Preliminary Injunction**

A preliminary injunction may be issued provided that the moving party

demonstrates (a) irreparable harm and (b) either (1) likelihood of success on the

merits or (2) sufficiently serious questions going to the merits to make them a fair ground

for litigation and a balance of hardships tipping decidedly toward the party requesting the

preliminary relief.  Lusk v.  Village of Cold Spring, 475 F.3d 480, 485 (2d Cir. 2007)

(quotation marks and citations omitted)

The Supreme Court has declared that "the loss of First Amendment freedoms, for

even minimal periods of time, constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347,

373 (1976).   "[W]hen an alleged deprivation of a constitutional right is involved, . . . no

further showing of irreparable injury is necessary." Mitchell v. Cuomo, 748 F.2d 804, 806

(2d Cir. 1984).   Thus, the dispute on the preliminary injunction motion is whether Plaintiff

can satisfy the second prong on the preliminary injunction standard.  While a factual

hearing is generally required on an application for a preliminary injunction, no hearing is

required where material issues are not in dispute. Maryland Casualty Co. v. Realty

Advisory Board on Labor Relations, 107 F.3d 979, 984 (2d Cir. 1997).

## III.    BACKGROUND[2]

Plaintiff Daniel W. Burritt owns property at 658 U.S. Highway 11, Gouverneur, New

York, on which he owns and operates a bridge building business named "Acts II

Construction, Inc.: Building Bridges for Jesus."  Burritt is a devout Christian who "believes

he has a religious duty to communicate the truth about Jesus Christ through all aspects of

---

[2]The background facts are taken from the Complaint or are not genuinely in dispute.

3

his life, including his work.  He regularly shares the Gospel of Jesus Christ to persons he encounters through work, at his office and in the field, and in his personal life."  Compl. ¶ 8. Burritt submitted an affidavit and exhibits that demonstrate that he uses his business, and the advertising and community presence from that business, to engage in extensive evangelization of his Christian beliefs.  Burrit Aff. & Ex. A [dkt. # 14].

Burritt owns a trailer (from a tractor-trailer combination) that he uses for storage for his business at the 658 U.S. Highway 11 location.  He painted several messages on the trailer that covered almost the entirety of three sides of the trailer.  Looking at the tractor trailer from the front, the left side reads: "Your Way or God's Way? Jesus Said 'I Am the Way the Truth and the Life, No Man Comes to the Father Except by Me.' Will You Spend Eternity with Jesus? www.jsm.org".  Compl.  ¶ 11.  The right side reads:  "Sin Has Separated You From God. All Have Sinned and Fall Short of the Glory of God.  The Blood of Jesus Cleanses Us from All Sin. Are You Washed in the Blood? www.jsm.org". Id.  On the front side, Burritt  painted a picture of a cross with the words underneath the cross: "It Is Finished." Id.

In August of 2007,  Burritt placed the trailer on his property on the edge of Route 11 perpendicular to the road with the front facing the road. Id.  ¶ 12.  On May 19, 2008, Burritt received a letter from the Real Estate Division of the New York State Department of Transportation ( "NYSDOT"), Region Seven in Watertown, New York.  Id. ¶ 13.  The letter was from Defendant Robin Disbro.  Disbro is a Real Estate Specialist for the New York State Department of Transportation in its Region Seven office in Watertown,

New York. Id.[3]

The letter informed Burritt that the trailer encroached 12 feet into the public right of way (which extends 60 feet from the center line of this two-lane road) and had to be moved back 12 feet within 30 days. Compl. Ex. A.  Second, it informed Burritt that N.Y.S. Route 11 is a "controlled route" for outdoor advertising controlled under the Sign Laws and declared that "if you elect to move this sign out of the State highway right of way on to your own property in this location, you will need to obtain an outdoor advertising permit from the New York State Department of Transportation." Id.   Third, it noted that, pursuant to 17 NYCRR Part 150.6(d), only one sign that exceeds 325 square feet can be visible from a given direction. Id.

According to the letter, the trailer was classified in Defendant's records as an "illegal sign" because it was an "off-premises" sign that had not been registered, and advised that illegal signs are considered public nuisances and "subject to removal in 30 days." Id.  The letter further indicated that the NYSDOT would forward the matter to the Attorney General's Office "if the sign is not removed or brought into compliance with the outdoor advertising regulations."  Id.  Finally, the letter included an outdoor advertising permit application and provided some information on completing the application, including the requirement to submit "a copy of the local municipal approval to erect this sign."  Id.

After receipt of this letter, Burritt moved his trailer back the requisite 12 feet out of the State highway right-of-way and removed one of the sides of the trailer sign so that

---

[3] DiSorbo is sued only in her official capacity. Compl. ¶ 6. Consequently, the sole defendant in this case is the New York State Department of Transportation. See Mathie v. Fries, 121 F.3d 808, 818 (2d Cir. 1997)("A claim against a government officer in [her] official capacity is, and should be treated as, a claim against the entity that employs the officer. . . .")(citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)).

multiple sides were no longer visible from any one direction. Compl. ¶ 31.[4]  A series of

correspondence between Burritt's counsel and the NYSDOT followed with Burritt's counsel

seeking clarification regarding the sign laws implicated in this matter. See Compl. Exhibits

B-E.

In a letter dated June 4, 2008, the NYSDOT specified the following regarding the

registration/permit requirements:

> [C]ertain signs along these controlled routes [including Route 11] are allowed
> without a permit (such as official signs, on-premise signs and for sale signs)
> while other signs are permitted subject to the controlling criteria set forth in
> the laws and regulations and while other signs are prohibited. An on-premise
> sign for purposes of the regulations is described in 17 NYCRR Part
> 150.1(dd) as "On-premises sign means . . . a sign advertising activities
> conducted on the property on which it is located, and which conforms to the
> provisions of section 150.13 of this Part."
>
> The sign located on Mr. Burritt's property does not meet the criteria of an
> on-premise sign . . . . The sign on Mr. Burritt's property is therefore subject to
> . . . the registration provisions of 17 NYCRR Part 150.15. . . . In the event
> that the sign is not removed or brought into compliance, the Department will
> forward this matter to the New York State Attorney General's Office and
> request that office to seek a court order for the removal of this sign.

Compl. Ex. E.

## IV.    NEW YORK'S SIGN LAWS

"In order that the state of New York may be entitled to be paid by the United States

an increased share of the costs of projects on the interstate highway system," Highway L.

§ 86, the New York Legislature enacted Highway Law §§  86 and 88.  These sections

authorize the New York State commissioner of transportation to enter into an agreement

with the United States secretary of transportation for the control of outdoor advertising

---

[4]Burritt removed the cross and words "It Is Finished" from the front end of the trailer.

along interstate and federally funded highways as required by, *inter alia*, the federal

Highway Beautification Act of 1965,  23 U.S.C. § 231, and "to promulgate and enforce

regulations in conformity with the national policy, for control of the erection and

maintenance of advertising signs, displays, and other advertising devices within six

hundred and sixty feet of the edge of the right of way of controlled portions of the

interstate highways system." Highway L. § 86; see Highway L. § 88 (authorizing the New

York State Commissioner of Transportation to implement regulations in conformity with

federal policy to control outdoor advertising).

> The legislative findings and declaration of purpose relative to Section 88 provide as

follows:

> The legislature finds and declares that the erection and maintenance of
> outdoor advertising signs, displays and devices in areas adjacent to the
> interstate and primary highway systems should be controlled in order to
> protect the public investment in such highways, to promote the safety and
> recreational value of public travel, and to preserve natural beauty. . . . It is
> the intention of the legislature in this act to provide the statutory basis for
> regulation of outdoor advertising consistent with the public policy relating to
> areas adjacent to the interstate and primary highway systems declared by
> the congress of the United States in title twenty-three of the United States
> code [23 U.S.C.A. § 101 *et seq*.].

Section 1 of L.1968, c. 581 (McKinney's Highway Law § 88)(2008).

> This stated purpose is consistent with Congress's stated policy in enacting the

federal highway laws. See Lamar Central Outdoor, LLC v. N.Y.,  20 Misc.3d 183, 186-187

(Sp. Ct., Albany Cty. 2008) ("In enacting the legislation known as the Highway

Beautification Act . . . , Congress found and declared that 'the erection and maintenance

of outdoor advertising signs . . . in areas adjacent to the Interstate System and the primary

system should be controlled in order to protect the public investment in such highways, to

promote the safety and recreational value of public travel, and to preserve natural beauty.'")(quoting 23 U.S.C. § 131(a)).

Although Plaintiff challenges the entirety of New York's outdoor advertising control statutes enacted through New York Highway Law §§ 86 & 88, the instant dispute focuses on the enforcement regulations contained at 17 NYCRR Part 150.  As indicated by the NYSDOT's June 4, 2008 letter, certain signs, such as "on-premises" signs, are allowed without a permit or prior registration provided they comply with the regulations addressed to size, location, and other physical characteristics of the sign. See 17 NYCRR § 150.15. An "off-premises" sign, by contrast, requires a permit and registration including the payment of a registration fee.  Id.

Section 150.1(dd) defines an "on-premises" sign as "a sign advertising the sale or lease of property upon which it is located or a sign advertising activities conducted on the property on which it is located, and which conforms to the provisions of section 150.13 of this Part." 17 NYCRR § 150.1(dd).

Section 150.13, in turn, provides in pertinent part:

(a) The provisions of this section are intended to establish the criteria for determining whether a sign is an on-premises sign for the purpose of the outdoor advertising control statutes. An on-premises sign is permitted to exist and is not regulated under the provisions of section 88 of the Highway Law, as amended. . . .

(b) A sign will be considered to be an on-premises sign if it meets the following requirements:

(1) The sign must be located on the same premises as the activity or property advertised.

(2) The sign must have as its purpose the identification of the activity or its products or services, or the sale or lease of the property on which the sign is located, rather than the purpose

8

of general advertising.

(3) In order to be classified as an on-premises sign, such sign must meet the following premises test:

> (i) The premises on which an activity is conducted is determined by physical facts rather than property lines. Generally, it is defined as the land occupied by the buildings or other physical uses that are necessary or customarily incident to the activity, including such open spaces as are arranged and designed to be used in connection with such buildings or uses.

> * * *

(4) In order to be classified as an on-premises sign, such sign must meet the following purpose test:

> (i) Such sign must have as its purpose the identification of the activity located on the premises, or its products or services, or the sale or lease of the property on which the sign is located, rather than the business of outdoor advertising.

> (ii) Any sign which consists solely of the name of the establishment is an on-premises sign.

> (iii) A sign which identifies the establishment's principal or accessory products or services offered on the premises is an on-premises sign. An example of an accessory product would be a brand of tires offered for sale at a service station.

> * * *

17 NYCRR § 150.13.

## V.  PENDING MOTIONS

Burritt contends that enforcement of New York's Sign Laws violate his rights guaranteed by the free speech clause of the First Amendment of the United States Constitution. <u>See</u>  Compl. ¶¶ 32-33, 39-41.[5]   He alleges, *inter alia,* that

---

[5] The Complaint alleges:

(continued...)

Defendants engage in content-based discrimination in violation of the First and Fourteenth Amendments to the United States Constitution by allowing—without costs and other regulatory obligations—"on-premises" advertising of products, services, or business, while imposing such costs and regulatory burdens on those with signs containing noncommercial religious messages, such as are found on Mr. Burritt's tractor trailer.

Id. ¶ 40.

Plaintiff challenges the Sign Laws both facially and as applied, and seeks (1) a declaration that the Sign Laws are unconstitutional, and (2) an injunction preventing enforcement of the laws relative to his trailer sign.  To resolve the preliminary injunction motion, however, the Court need only resolve the "as applied" prong of Plaintiff's action.  See Plf. Mem. L. in Opp. to Def. Mot. to Dismiss p. 25 (Plaintiff "respectfully requests that

---

[5](...continued)

32.     Mr. Burritt has not . . .  initiated the costly and burdensome process of seeking DOT registration and sign permit pursuant to Part 150.15.

33.     Defendants are violating the clear constitutional edicts of the United States Supreme Court when they treat commercial signs more favorably than non-commercial communications, by requiring DOT registration and a permit for Mr. Burritt's message bearing tractor trailer while exempting "on-premises" commercial signs from the onerous permit requirement and its associated fees.

* * *

39.     By policy and practice, Defendants allow commercial "on-premises" signs on private property in controlled areas such as U.S. Route 11 to exist without having to submit to the permit and registration requirements of 17 NYCRR Part 150, as well as those additional requirements required by [the NYSDOT], but they refuse to give this waiver to noncommercial religious signs and specifically Mr. Burritt's tractor trailer, on the basis that it is not an "on-premises" sign.

40.     Defendants engage in content-based discrimination in violation of the First and Fourteenth Amendments to the United States Constitution by allowing—without costs and other regulatory obligations—"on-premises" advertising of products, services, or business, while imposing such costs and regulatory burdens on those with signs containing noncommercial religious messages, such as are found on Mr. Burritt's tractor trailer.  Defendants have discriminated against Plaintiff because of the noncommercial religious content of the exhortations on his tractor trailer.

41.     Defendants' regulations, and their application of them to Mr. Burritt, constitute impermissible content-based censorship of religious speech, in violation of his rights guaranteed by the free speech clause of the First Amendment of the United States Constitution.

Compl. ¶¶ 32-33, 39-41.

10

the Court grant . . . a preliminary injunction . . . enjoining the operation of Defendants'

policies and practices that deny Mr. Burritt the waiver of registration, that classify his

tractor trailer as being in violation as a result, and that threaten to confiscate his tractor

trailer and submit his alleged violation to the Attorney General for legal action against

him.").

Defendants move to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6),

contending that "Plaintiff's constitutional challenge must fail as New York's Sign Laws are

content neutral, do not disproportionately regulate non-commercial speech as compared

to commercial speech, and constitute a constitutionally permissible time, place and

manner restriction."  Def. Mem. L. p. 1.  Defendants also assert that the action against the

State of New York is barred by the Eleventh Amendment.

**VI.    DISCUSSION**

      **a.    Eleventh Amendment**

The Eleventh Amendment serves as a jurisdictional bar to suits against a state

agency regardless of the nature of the relief sought, including suits in equity. Pennhurst

State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984); Green v. Mansour, 474

U.S. 64, 72-73 (1985); see also Komlosi v. New York State Office of Mental Retardation

and Developmental Disabilities, 64 F.3d 810 (2d Cir. 1995)(OMRDD is an arm of the state

and is immune under the Eleventh Amendment).  However, a narrow exception to this

principle allows a federal court to issue an injunction against a state official in his or her

official capacity who is acting contrary to federal law. Ex Parte Young, 209 U.S. 123

(1908); see Pennhurst, 465 U.S. at 102; New York Health and Hospitals Corporation et al.

11

v. Perales, 50 F.3d 129 (2d Cir. 1995). This exception is a limited one, utilized only "when there is a specific conflict between the federal mandate and the state plan or practice that a federal right is implicated," Doe v. Pfrommer, 148 F. 3d 73, 80-81 (2d Cir. 1998), and is authorized to "vindicate the supremacy of [federal] law." Ward v. Thomas, 207 F.3d 114, 119 (2d Cir. 2000).

The Supreme Court has held that "[i]n determining whether the doctrine of Ex Parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland Inc. v. Public Serv. Comm. Of Maryland, 122 S. Ct. 1753, 1760 (2002)(quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)(O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment). The inquiry "does not include an analysis of the merits of the claim." Id. at 1761.

Inasmuch as Plaintiff alleges that future application and enforcement of New York's Sign Laws would violate his federal constitutional rights, the Complaint sets forth claims for injunctive and declaratory relief that may proceed under the exception enunciated in Ex Parte Young. The prayer for injunctive relief is clearly prospective in nature. Further, the Complaint does not seek to impose a monetary loss upon the State for past conduct. Therefore, "[i]nsofar as the exposure of the State is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction." Verizon Maryland Inc., 122 S. Ct. at 1760. Consequently, the motion on this ground is denied.

**b.      First Amendment Challenge**

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech. . . ."  U.S. Const. amend. I.  It has "long been established that 'the conception of liberty under the due process clause of the Fourteenth Amendment embraces the right of free speech,' and that [the First Amendment's] provisions therefore apply to state governments."  <u>Lusk</u>, 475 F.3d at 485 (quoting <u>Stromberg v. California</u>, 283 U.S. 359, 368 (1931)).   The First Amendment applies to the sign in issue here.  <u>See</u> <u>Lusk v. Village of Cold Spring</u>, 418 F. Supp.2d 314, 319 (S.D.N.Y. 2005)("The Supreme Court has also held that the First Amendment's protections encompass not only actual speech but an individual's expressive conduct (such as the posting of signs) as well.")(citing <u>Virginia v. Black</u>, 538 U.S. 343, 358, 123 S. Ct. 1536, 155 L. Ed.2d 535 (2003)), <u>rev'd in part</u>, 475 F.3d 480 (2d Cir. 2007); <u>see also</u> <u>Clear Channel Outdoor, Inc.  v.  Town of Windham</u>, 352 F. Supp.2d 297, 304 (N.D.N.Y.  2005).[6]

As Judge Hurd explained in <u>Clear Channel</u>:

> The first step in considering the constitutionality of legislation effecting protected speech is to determine whether or not it is content-neutral or content-based. The answer to that question determines the level of scrutiny that applies.

<u>Clear Channel</u>, 352 F. Supp.2d at 303.

---

[6] Judge Hurd wrote in <u>Clear Channel</u>:

It is well settled that "the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." <u>Members of City Council v. Taxpayers for Vincent</u>, 466 U.S. 789, 804, 104 S. Ct. 2118, 2128, 80 L. Ed.2d 772 (1984). "First Amendment protections, however, encompass not only content-based prohibitions on speech, but also content-based restrictions on speech." [<u>Savago v. Village of New Paltz</u>, 214 F. Supp.2d 252, 258 (N.D.N.Y.2002].

352 F. Supp. 2d at 304.

13

Content-based regulations on speech are reviewed using strict scrutiny.  Id.  To survive strict scrutiny, the State "must show that the 'regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.'"  Id. (quoting Boos v. Barry, 485 U.S. 312, 321, 108 S. Ct. 1157, 99 L. Ed.2d 333 (1988)).

"An ordinance is content-based when the content of the speech determines whether the ordinance applies." Id. (citing Forsyth County v. Nationalist Movement, 505 U.S. 123, 134, 112 S. Ct. 2395, 2403, 120 L. Ed.2d 101 (1992) (finding challenged ordinance to be content-based because the administrator necessarily had to examine the content of the speech to assess fees required by the ordinance); Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 516, 101 S. Ct. 2882, 69 L. Ed.2d 800 (1981)(finding challenged ordinance to be content-based because it "distinguished in several ways between permissible and impermissible signs at a particular location by reference to their content")).  A review of 17 NYCRR Part 150 reveals that the determination of whether a particular sign is classified as an "on-premises" or an "off-premises" sign requires the laws' administrator to examine the content of a particular sign and compare that to the perceived "on-premises activity."  Section 150.1(dd) defines an "on-premises" sign as "a sign . . . advertising activities conducted on the property on which it is located." 17 NYCRR § 150.1(dd).  Despite Defendant's argument to the contrary, see Def. Mem. L., p. 9 ("The test . . . contemplates the connection or nexus between the geographic location of the sign and the activity set forth by the sign."), the relevant "nexus" is not between the geographic location and the activity set forth by the sign, but between the activity conducted at the location and the content of the sign.  Indeed, the "purposes test" found at § 150.13(b)(4) requires that an on-premises sign "have as its purpose the identification of the activity

14

located on the premises."

Plaintiff has asserted a sincerely held religious belief mandating that all aspects of his life, including his business, be devoted to evangelizing his beliefs.  He has further asserted that he has acted upon this belief and uses his business as part of his evangelical mission.  Accepting these assertion as true, as the Court must do in the context of the Rule 12(b)(6) motion and as it may do on the motion for a preliminary injunction because Defendant has offered no evidence in opposition thereto, Plaintiff has demonstrated that the content of his trailer sign does relate to the activities conducted on the premises where the signs are located.  A requirement by the State that he remove the sign or obtain a permit based on the State's interpretation of the activities "conducted" at the premises constitutes a content-based regulation on Plaintiff's speech.  See Forsyth County, 505 U.S. at  134; Metromedia, 453 U.S. at  516.

This determination, in turn, implicates strict scrutiny which requires the State to demonstrate "that the 'regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.'" Clear Channel,  352 F. Supp.2d at 304 (quoting Boos, 485 U.S. at 321).  As indicated by the New York's Legislature's stated purpose for enacting the Sign Laws, the laws are designed primarily to protect aesthetics and traffic safety.  Although concerns for aesthetics and traffic safety may pass constitutional muster under the "reasonable time, place, and manner restrictions" rubric applied to content-neutral regulations, see Lusk, 475 F. 3d at 483; Clear Channel, 352 F. Supp.2d at  303, the content-based nature of the regulations requires the State to demonstrate a compelling state interest served by the regulations.  As Judge Hurd noted in Clear Channel:

15

If strict scrutiny is applied to a content-based regulation it will likely fail. First, while aesthetics and traffic safety are regularly found to be substantial enough government interests to support a content-neutral regulation, those interests are rarely compelling enough to support a content-based regulation. See Savago, 214 F. Supp.2d at 259; Knoeffler v. Town of Mamakating, 87 F. Supp.2d 322, 327 (S.D.N.Y.2000) (citing [City of Ladue v. Gilleo, 512 U.S. 43, 59, 114 S. Ct. 2038, 129 L.Ed.2d 36 (1994)]; Dimmitt v. City of Clearwater, 985 F.2d 1565, 1572 (11th Cir. 1993).

Secondly, narrow tailoring is easier prescribed than done. A statute is narrowly tailored if it "targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." Dae Woo Kim v. City of New York, 774 F. Supp. 164, 170 (S.D.N.Y.1991) (quoting Frisby v. Schultz, 487 U.S. 474, 485, 108 S. Ct. 2495, 2503, 101 L. Ed.2d 420). Therefore, a statute is unconstitutionally over broad, or overinclusive, if it includes within its prohibitions constitutionally protected conduct. Grayned v. City of Rockford, 408 U.S. 104, 114, 92 S. Ct. 2294, 2302, 33 L. Ed.2d 222 (1972). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." NAACP v. Button, 371 U.S. 415, 433, 83 S. Ct. 328, 338, 9 L. Ed.2d 405 (1963) (citing Cantwell v. Connecticut, 310 U.S. 296, 311, 60 S. Ct. 900, 906, 84 L. Ed. 1213 (1940)).

Clear Channel, 352 F. Supp.2d at 304.

The State has not demonstrated a compelling interest for the Sign Laws' restriction on "off-premises" signs. Further, and assuming, *arguendo,* that the concerns for aesthetics and traffic safety do constitute compelling state interests, the regulations are not narrowly tailored to achieve these ends. Plaintiff's trailer sign is apparently adjudged an "illegal sign" not because of its location on his property or its dimensions, but because of its content. It seems that a sign containing the same physical characteristics as Plaintiff's trainer sign but announcing the name of his business, "Acts II Construction, Inc.: Building Bridges for Jesus," would be allowed under the regulations. The Court cannot see how aesthetics and traffic safety are protected by a sign that displays the name of business, but are jeopardized by a sign of the same size and location that contains a religious message. Simply put, if New York's Sign Law allows, without registration or

16

permit, a sign of the same physical characteristics as the challenged sign announcing the name of Plaintiff's business, then the regulations are not narrowly tailored to achieve the ends that the regulations are intended to achieve.

Plaintiff has demonstrated a viable claim that New York's Sign Laws, as applied in this instance, infringe his First Amendment right to free speech.  For these reasons, and given the importance of free speech in our society, the Court concludes that Plaintiff has presented a claim with sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor.

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is **GRANTED**, and the State of New York is preliminarily **ENJOINED** from taking further action against Plaintiff DANIEL W. BURRITT for the trailer sign located on his property at 658 U.S. Highway 11, Gouverneur, New York.  This injunction shall remain in effect until further order of this Court, or until the instant case is resolved.  Due to the public importance of this matter and the lack of evidence of damages inuring to the State while the preliminary injunction remains in effect, Plaintiff is not required to post a bond.

Defendants' motion to the dismiss the action is **DENIED**.

 **IT IS SO ORDERED**

DATED:December 18, 2008

Thomas J. McAvoy
Senior, U.S. District Judge

17